UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RUSSELL P. TREMAINE,<br><br>             Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>             Defendant. | Case No. C13-2030-RSM-BAT<br><br>**REPORT AND RECOMMENDATION** |

Russell P. Tremaine seeks review of the denial of her Supplemental Security Income application. She contends the ALJ erred in discounting her credibility and rejecting the opinions of treating physicians Robert Sanford, M.D., and Kelly Barbour, M.D. Dkt. 24 at 2. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

**BACKGROUND**

Ms. Tremaine is currently 38 years old, has a high school diploma and has worked as a cashier, server, dishwasher, temporary laborer, and hotel server.[1] On April 20, 2012, she applied

---

[1] Tr. 258-59.

REPORT AND RECOMMENDATION - 1

for benefits, alleging disability as of August 10, 2007.[2]  Tr. 222-28.  Her application was denied initially and on reconsideration.  Tr. 141-43, 149-58.  The ALJ conducted a hearing on April 9, 2013 (Tr. 30-73), and subsequently found Ms. Tremaine not disabled.  Tr. 11-22.  As the Appeals Council denied Ms. Tremaine's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1-5.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[3] the ALJ found:

**Step one:**  Ms. Tremaine had not engaged in substantial gainful activity since April 20, 2012, her application date.

**Step two:**  Ms. Tremaine's ileostomy due to Crohn's disease is severe.

**Step three:**  This impairment did not meet or equal the requirements of a listed impairment.[4]

**Residual Functional Capacity ("RFC"):**  Ms. Tremaine has the RFC to perform light work as follows: she can lift/carry 20 pounds occasionally and 10 pounds frequently, and can push/pull unlimitedly within those weight restrictions.  She can sit for about six hours and stand/walk for about six hours in an eight-hour workday with regular breaks.  She can frequently climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds.  She has unlimited ability to balance, kneel, and crouch, but can only occasionally stoop.  She cannot crawl.  She should avoid concentrated exposure to extreme heat, vibration, wetness, and hazards.

**Step four:**  Ms. Tremaine can perform her past work as a fast-food worker, waitress, and telephone operator and is not disabled.

Tr. 11-22.

## DISCUSSION

**A.  Credibility**

The ALJ discounted the credibility of Ms. Tremaine's subjective complaints in light of

---

[2] She had previously applied for benefits and been denied in 2011, and the ALJ declined to reopen these prior applications.  Tr. 11.
[3] 20 C.F.R. §§ 404.1520, 416.920.
[4] 20 C.F.R. Part 404, Subpart P, Appendix 1.

REPORT AND RECOMMENDATION - 2

inconsistent daily activities, the reasons she stopped working and volunteering, inconsistent medical evidence, and inconsistent statements.  Tr. 16-19.  Ms. Tremaine contends the ALJ's reasons were not clear and convincing.  *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ cited, *inter alia*, Ms. Tremaine's ability to engage in various activities as evidence that she is more functional than alleged.  Tr. 16-17.  Ms. Tremaine argues that the ALJ selectively cited her activities and did not note that she struggled to complete her activities regularly when her physical symptoms flared.  Ms. Tremaine contends that the ALJ erred in finding that her activities establish she is more functional than alleged, because her activities do not establish that she could sustain full-time work.  Dkt. 24 at 9.  This argument is inapposite, however, because the ALJ did not cite Ms. Tremaine's activities as evidence of transferable work capabilities, but as evidence contradicting her allegations.  Tr. 16.  *See Orn v. Astrue*, 495 F.3d 625, 629 (9th Cir. 2007) (explaining the two bases for citing daily activities as a grounds for discounting a claimant's credibility).  Thus, the proper inquiry here is whether the ALJ cited daily activities that can be reasonably construed as inconsistent with Ms. Tremaine's allegations.

The activity most potentially inconsistent[5] with Ms. Tremaine's allegations is her part-time volunteer work at the food cooperative and at a nursing home, while she was participating with the Division of Vocational Rehabilitation ("DVR").  She was able to volunteer 10-15 hours per week for these organizations.  Tr. 50-54.  The nursing home staff were pleased with her performance and expressed interest in hiring her in the future.  Tr. 415.  Ms. Tremaine also reported enjoying her volunteer experience at the food co-op.  Tr. 418.  Ms. Tremaine ultimately

---

[5] The ALJ also cited Ms. Tremaine's ability to clean house for an hour a day, and engage in Tai Chi for half an hour a day, use public transportation, attend a social group once per week, study poetry, sew, and manage her personal hygiene (Tr. 16), but there is no showing these activities would be inconsistent with her allegations of limitations caused by Crohn's disease.

REPORT AND RECOMMENDATION - 3

ceased participating in DVR activities, due to instability in her housing situation.  Tr. 399-404.  The fact that Ms. Tremaine was able to participate in regular volunteer activities, and stopped volunteering due to factors unrelated to her alleged disability, shows that she retains some functional abilities, but is consistent with her allegations that she could complete some work-like activities, but not on a full-time schedule.  *See* Tr. 50 (hearing testimony describing Ms. Tremaine's difficulty leaving her home for an entire day), 764 (October 2012 treatment note[6] indicating that Ms. Tremaine reported an ability to complete part-time, though not full-time work).

The ALJ also found that Ms. Tremaine described limitations at the administrative hearing that she had never reported to any providers before, specifically the amount of time she required to empty her ileostomy bag.  Tr. 18.  At the hearing, Ms. Tremaine reported that she needed to empty the ileostomy bag "up to 10 times a day, at least 8 times, and tak[ing] at least 10-15 minutes each time," and that if the bag is leaking then she must replace it (which takes longer than an hour).  *Id*.  The ALJ states that this routine "translates into hours," and that there is no evidence in the record that Ms. Tremaine ever reported to her providers or to her DVR counselors that she required this type of schedule.  Tr. 18-19.  The ALJ also noted that Ms. Tremaine was able to volunteer regularly and use public transportation to attend transgender support groups, which led her to conclude that Ms. Tremaine "has attempted to portray limitations tha[t] are not actually present in order to increase the chance of obtaining benefits."  Tr. 18.

Ms. Tremaine objects to the ALJ's line of reasoning, citing Dr. Barbour's opinion that

---

[6] The note also contains a typo: "[Ms. Tremaine] continues to have difficulty with activity which is only partially controlled with [her] doxycycline."  Tr. 764.  Ms. Tremaine used doxycycline for *acne*, not to address her activity level.  *See* Tr. 726 ("[Ms. Tremaine] also has some acne which is controlled with chronic doxycycline usage.").

REPORT AND RECOMMENDATION - 4

she would require 2-3 additional bathroom breaks (lasting from 10-45 minutes each) during a workday.  Tr. 800.  Ms. Tremaine's self-described bathroom needs are still somewhat more extreme than those identified by Dr. Barbour (Tr. 58-59), but Dr. Barbour's treatment notes do indicate that she believed Ms. Tremaine required "frequent" bathroom breaks.  Tr. 749.  While there may be some difference in the degree to which Ms. Tremaine's bathroom needs were reported, the record does consistently indicate that she required access to a bathroom beyond regularly scheduled work breaks, and thus the ALJ failed to identify an actual inconsistency as to Ms. Tremaine's reporting.

The ALJ also interpreted the medical evidence to be inconsistent with Ms. Tremaine's allegations, particularly a January 2011 consultative examination wherein Ms. Tremaine reported that she had no limitation as to sitting and that she could walk and or stand for at least 30 minutes at a time.  Tr. 17 (citing Tr. 711).  But the ALJ omitted the consultative examiner's notation that Ms. Tremaine reported fatigue, and that the examiner could not assess the effect of fatigue on her ability to persist.  Tr. 715.

The ALJ also cited Dr. Sanford's opinion that Ms. Tremaine's Crohn's disease was well-controlled with medication.  Tr. 18 (citing Tr. 736).  Dr. Sanford did so opine, but also indicated that the two-week medication cycle resulted in "significant fatigue," pain, and drainage toward the end of the cycle.  Tr. 734, 736.  The ALJ found that there was no evidence that Ms. Tremaine's pain reached disabling levels at the end of the cycle, but Ms. Tremaine did not claim to be disabled due to that pain.  Instead, she contended that she could not work full-time due to the cycle of fatigue and the requirements of managing her ileostomy, and none of the medical evidence cited by the ALJ in fact contradicts those central allegations.

In sum, the ALJ's adverse credibility determination is not supported by clear and

REPORT AND RECOMMENDATION - 5

1  convincing reasons.  Although the ALJ cited evidence which showed that Ms. Tremaine retained
2  some functionality, her analysis does not address the crux of Ms. Tremaine's allegations, which
3  was that managing her Crohn's disease required frequent access to a bathroom and that the
4  medications she required resulted in a cycle of significant fatigue for a few days every two
5  weeks.  The ALJ did not provide a clear and convincing reason to disbelieve Ms. Tremaine's
6  subjective description of her symptoms, and her adverse credibility determination is thus legally
7  insufficient.

8  **B.     Medical Opinions**

9        Ms. Tremaine argues that the ALJ erred in discounting opinions provided by Drs.
10 Sanford and Barbour.  The ALJ discounted three of Dr. Sanford's opinions because they were
11 rendered before Ms. Tremaine's alleged disability onset, and discounted the opinions rendered
12 within the relevant time period as unexplained and/or inconsistent with other evidence.  Tr. 20.
13 The ALJ rejected Dr. Barbour's opinions as rendered in reliance upon Ms. Tremaine's non-
14 credible self-report.  Tr. 20-21.  Ms. Tremaine argues that the ALJ's reasons are not specific and
15 legitimate.  *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).

16       For the reasons explained in the previous section, the ALJ's adverse credibility
17 determination is not supported by substantial evidence and is thus legally insufficient.
18 Accordingly, because the only reason the ALJ provided for discounting Dr. Barbour's opinions
19 (Tr. 749, 754-55, 800-02) was her reliance on Ms. Tremaine's subjective self-report, this
20 reasoning fails because the adverse credibility determination fails.  Tr.  21.

21       The ALJ's reasoning as to Dr. Sanford's opinions is legitimate, however.  The ALJ
22 correctly found that Dr. Sanford's opinions dating to 2005 and 2006 (Tr. 774-82) were not
23 probative as to Ms. Tremaine's application because they were rendered years before Ms.

REPORT AND RECOMMENDATION - 6

Tremaine alleged that her disability onset, and before Ms. Tremaine underwent surgeries and obtained medication that improved her functioning.  Tr. 44-47.

Dr. Sanford's later opinions have other defects.  His December 2010 form opinion describes limitations that he believes Ms. Tremaine will have for four weeks, and he noted that he did not perform a physical evaluation to assess Ms. Tremaine's limitations.  Tr. 707-08.  The ALJ properly discounted this opinion as unexplained and contradicted by a consultative examination indicating no bending limitation.  Tr. 20.  Dr. Sanford's July 2011 opinion indicates that Ms. Tremaine has some limitations and fatigue caused by her Crohn's disease, and that he believes she requires workplace accommodation once she is able to "handle full-time employment."  Tr. 734.  The ALJ correctly noted that Dr. Sanford did not indicate why Ms. Tremaine was unable to handle full-time employment at that time, which renders that opinion less probative as to the ALJ's inquiry.  Tr. 20.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ should reassess Ms. Tremaine's credibility and Dr. Barbour's opinions, and revisit the RFC assessment and step-four findings as necessary.

A proposed order accompanies this Report and Recommendation.  An objection to the Report and Recommendation must be filed and served no later than **July 15, 2014.**  If no objections are filed, the matter will be ready for the Court's consideration on **July 16, 2014**.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date

the objection is filed and served.  Objections and responses shall not exceed **eight** pages.  The failure to timely object may affect the right to appeal.

DATED this 1st day of July, 2014.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 8